EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

DISTRICT OF COLUMBIA PUBLIC
SCHOOLS, Defendant.

No. CIV.A. 02–371 (RBW).

United States District Court,
District of Columbia.

July 1, 2003.

Robert Francis Goldman, Barbara DeShona Brice–Brown, U.S. Equal Employment Opportunity Commission, Washington, DC, for Plaintiff.

Mr. Robert A. DeBerardinas, Jr., Office of DC Corporation Counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

Currently before the Court is the Defendant's Motion for a Protective Order [# 27] ("Def.'s Mot.") and Plaintiff's Opposition to Defendant's Motion for a Protective Order and Request for Sanctions [# 29] ("Pl.'s Opp'n"). For the reasons set forth below, defendant's motion shall be granted and plaintiff's request for sanctions shall be denied.

I.

This is an action brought by the Equal Employment Opportunity Commission ("EEOC") against the District of Columbia Public Schools ("DCPS") for DCPS' alleged violation of the Age Discrimination in Employment Act ("ADEA"). The EEOC alleges that the DCPS violated the ADEA by terminating Dora Smith, a 67 year-old former school teacher with 37 years teaching experience. Compl. at 1.[1]

This is the most recent of several discovery disputes that have arisen between the parties. At the center of the present dispute is a request by the EEOC that defendant

1. References to "Compl." are to the Complaint    filed by plaintiff on February 26, 2002.

produce the teaching disciplines of each teacher who was employed by the defendant during the 1995–96 academic year, the year in which Ms. Smith was terminated as a result of a Reduction in Force ("RIF"). Defendant argues that this information is not relevant to plaintiff's claim that she was terminated on the basis of her age because "the focus of this trial will be upon the RIF procedures in general and how those procedures were utilized by Principal Birchette. The total number of teachers who taught a particular subject will be of no moment." Def.'s Mot. at 4. In addition, defendant argues that "the DCPS Office of Technology has informed [defense counsel] that the data requested by plaintiff is not retrievable from its computer system, in any event. Succinctly stated, plaintiff seeks data that has little or no relevancy to its claim for relief and is perhaps retrievable [only] from a search of every personnel file in the possession of DCPS." Id.

In opposition, plaintiff argues that the information it seeks is relevant because it "needs the teaching disciplines to conduct a proper statistical comparison between teachers who were terminated under the 1996 reduction-in-force and ones who were retained." Pl.'s Opp'n at 1–2. Plaintiff states that the Court has already ordered the defendant to produce the teaching disciplines of all teachers employed during the 1995–96 time period in an Order dated December 17, 2002. See Pl.'s Opp'n, Ex. 1 (Court Order dated December 17, 2002). Further, plaintiff argues that defense counsel had not previously indicated that the information was not retrievable. Id. at 4. Plaintiff therefore asks the Court to infer that defense counsel is withholding the requested information "because it is damaging to [d]efendant's

case" or alternatively because "[d]efendant is intentionally and cynically delaying discovery ..." Id. Plaintiff asks that the Court sanction defendant by "accepting the EEOC's contention for purposes of this case that [d]efendant's 1996 reduction-in-force had a statistically significant, adverse impact on older employees[,]" or, alternatively, that the Court impose monetary sanctions against the defendant. Id. at 4–5.[2]

In reply, defendant argues that plaintiff "fails to explain how [the information it seeks] is relevant to its age discrimination claim." Defendant's Reply to Plaintiff's Opposition to Motion for a Protective Order ("Def.'s Reply") at 1. Defendant argues that "plaintiff is now fully aware of the age of every teacher who was employed by DCPS prior to the RIF and the age of every teacher who was terminated as a result of the RIF. Based upon the data provided by defendant, [it argues that] the EEOC can now ascertain whether the [RIF] had a disparate impact upon any age group that it desires to analyze." Id. In addition, regarding the Court's prior order that defendant produce this information, defense counsel states it is his "recollection that in December the court invited the District to file a motion for a protective order, in the event that the requested information was not available from computer data." Id. Defense counsel states that he has been informed by Ulysses Keys, DCPS's Computer Specialist, "that the information as to each teacher's assignment in 1995 cannot be retrieved from the current computer data system." Id. at 2. Finally, defendant notes that it is not trying to delay these proceedings and anticipates filing a dispositive motion in this matter in a timely manner.[3]

---

2. Plaintiff also argued that defendant has failed to respond to the EEOC's Third Request for Production of Documents, specifically by failing to produce a retention policy document that presumably delineates the defendant's policy regarding the retention and destruction of documents in its possession. Pl.'s Opp'n at 5. Plaintiff asks that this Court preclude defendant from producing this document "at the eleventh hour[.]" Id. Plaintiff attached the defendant's response to the plaintiff's request in which counsel for the defendant states that the "[d]efendant continues to search for [the document destruction policy]."

Pl.'s Opp'n, Ex. D (Defendant's Response to Third Request for Production of Documents) ¶ 2. However, during the hearing held on June 25, 2003, plaintiff made no mention of this information; nor was it mentioned in plaintiff's papers submitted in response to the Court's inquiry. If the request for this information is still outstanding, plaintiff should so advise the Court forthwith.

3. Dispositive motions were scheduled to be filed March 14, 2003; however, on March 12, 2003, this Court granted defendant's motion for an

## II.

Federal Rule of Civil Procedure 26(b) outlines the general standards regarding the scope of discovery in civil litigation. Pursuant to subsection (b)(1) of the rule:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things ... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). Although the standard for discovery is a broad one, it is not boundless. *See* Fed.R.Civ.P. 26(b)(1) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."). Pursuant to Rule 26(b)(2), the court "shall" limit the discovery available to a party if it is determined that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance

of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

Plaintiff argues that the information it is seeking regarding the teaching disciplines of the teachers is necessary because "the teaching discipline information DCPS has refused to produce is critical to a thorough analysis of whether the 1996 RIF had a statistically significant impact on older teachers." EEOC's Memorandum of Law in Response to Court's May 12, 2003 Order ("EEOC's Mem.") at 4.[4] Plaintiff states that statistical data of this type is routinely admissible in employment discrimination cases and argues that although "this is a disparate treatment case involving intentional age discrimination against one individual, statistical evidence is nonetheless relevant in establishing pretext." *Id.* at 3. In the declaration of plaintiff's expert, Hilary R. Weiner, a Senior Social Science Analyst with the EEOC, Ms. Weiner states that the teaching disciplines of the teachers employed by DCPS at the time of the RIF is needed because the discipline of the teachers is "one of the most important considerations in deciding whether or not to terminate a teacher" and failure to include this information in an analysis of whether the RIF had a disparate impact on older teachers could "lead to incorrect conclusions, which is often referred to as 'Simpson's Paradox.'"[5] EEOC Mem., Declaration of Hilary R. Weiner ("Weiner Decl.") ¶¶ 5–6.

Arguments similar to the plaintiff's were rejected by the court in *Prouty v. Nat'l R.R. Passenger Corp.*, 99 F.R.D. 545 (D.D.C. 1983). *Prouty* similarly involved claims of

---

extension of time to file its dispositive motion, which was then filed on March 17, 2003. Plaintiff's opposition was filed April 4, 2003; and the reply was filed on April 21, 2003. The pretrial conference is scheduled to occur on August 14, 2003.

4. The Court initially held a hearing regarding the parties' discovery dispute on May 9, 2003. At that time, the Court invited plaintiff's counsel to file the declaration of its expert setting forth the justification for needing the information, as well as any legal authority that would support plaintiff's request. Plaintiff filed its papers on May 22, 2003, to which defendant responded on June 6, 2003.

5. According to Ms. Weiner,

> Simpson's Paradox is said to occur when a statistical analysis of unstratified data provides a different result from an analysis involving data which is properly stratified. Usually, this happens when the event in question (in this case, proportion of terminations of teachers age 40 and older compared with terminations of younger teachers) differs by stratum (in this case, teaching specialty). The proper result stems from the analysis which takes into account the stratum to which a teach [sic] belongs prior to aggregation, not the one which ignores information on teaching specialty.

Weiner Decl. ¶ 7.

age discrimination made by the plaintiff. *Id.* at 546. At issue was plaintiff's motion to compel answers to interrogatories, including an interrogatory that sought information "concerning the race of employees hired by defendant ..." *Id.* Defendant argued that the information sought was "irrelevant, immaterial and beyond the scope of discovery because plaintiff only allege[d] age discrimination in his complaint, not race discrimination." *Id.* In opposition, plaintiff argued that the information was necessary "in order to present statistical evidence showing a pattern of age reduction in defendant's work force ... [and that] 'this lack of information could seriously distort [plaintiff's] statistical analysis.'" *Id.* (quoting plaintiff's Memorandum of Points and Authorities). However, the *Prouty* court held that the information plaintiff sought "relating to the race of [the defendant's] employees [was] not relevant to the instant complaint and [could] not be obtained.... Because plaintiff only alleges age discrimination, he is not entitled to any information pertaining to race." *Id.* (citations omitted).

■■■■■ Similar to the situation in *Prouty*, the information plaintiff seeks, *i.e.*, the teaching disciplines of every teacher employed by DCPS at the time of the RIF, is not directly relevant to the plaintiff's claims that DCPS discriminated against Dora Smith on the basis of her age when they terminated her. The Court does not dispute plaintiff's assertion that, as a general proposition, statistical evidence may be relevant in establishing pretext; however, the ability to present statistical evidence does not equate with the right to obtain discovery regarding information that is not relevant to the claim at issue. *See Waters v. United States Capitol Police Bd.*, 216 F.R.D. 153, 159 (D.D.C.2003) (in Title VII race discrimination case, court denied plaintiff's discovery request for information regarding "the name of each person who [currently] work[ed] for the defendant, his or her race, date of hire, current position and

grade." [The court held that] [a]ssuming the validity of a statistical analysis of the work force as of the date of plaintiff's termination, information as to hiring and promotions has no connection to plaintiff's claim that defendant is guilty of a pattern or practice of terminating members of a protected class disproportionately.... Without a more detailed justification for why gross data as to the present racial composition of the work force is relevant to a statistical analysis, thereby advancing plaintiff's claim of an illegal termination and retaliation, defendant's refusal to provide any further information is justifiable ...). Plaintiff makes no claim that the RIF had a disproportionate impact on teachers of a certain teaching discipline or, more precisely, that teachers of a certain teaching discipline were among the older employees working for the defendant and there was a disproportionate impact on those teachers. Thus, it is clear the information is not relevant to plaintiff's age discrimination claim. *See Marshall v. District of Columbia Water & Sewage Auth.*, 214 F.R.D. 23, 25 (D.D.C.2003) (in race discrimination lawsuit, court denied plaintiff's request for the "name, race, sex, and age" of all the defendant's employees during several years of his employment with defendant. "Because plaintiff has made neither a claim of sex discrimination nor age discrimination, the gender and age of employees at [plaintiff's place of employment] are irrelevant to the alleged race discrimination claim.").

In addition to the information plaintiff is seeking being irrelevant, defense counsel has represented to the Court that retrieving the information would be oppressive. This is because the only means of possibly obtaining this information would be to search the individual files of each teacher who was employed by DCPS at the time of the 1996 RIF. This is further reason not to require the defendant to produce this information, as requiring it to do so would impose an unreasonable burden on the defendant[6] and, in

---

6. Although plaintiff's counsel stated that the EEOC is prepared to make its staff available to perform the search for the relevant personnel files and to review them if they can be located, defendant has represented through its counsel that the search would be disruptive to the defen-

dant's business operations, as the file room where the files are located is frequently utilized by the defendant's employees and there would need to be a representative of the defendant present with the EEOC's staff members to ensure that the proper files would be searched.

**16**

any event, would result in a significant expenditure of time and effort for information that, at best, would prove minimally useful to the plaintiff. Therefore, defendant's motion for a protective order is granted and plaintiff's request for sanctions is denied.[7]

### ORDER

In accordance with the Court's rulings as expressed in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that defendant's motion for a protective order [# 27] is granted. It is further

**ORDERED** that the plaintiff's request for sanctions [# 29] is denied.

---

7. An order consistent with the Court's ruling accompanies this Opinion.